## Case No. 16,088.

### UNITED STATES v. PRICE.

[3 Hall, Law J. 121.]

District Court, D. New York. 1810.

SUMMONING JURY IN FEDERAL COURTS — COMPLIANCE WITH STATE LAWS—CHALLENGE TO ARRAY—PRACTICE.

[1. The provision in the judiciary acts, requiring jurors to be designated in the federal courts, as nearly as practicable, in the same manner as in the state courts, does not require a compliance with the state laws when in the opinion of the court it is wholly impracticable to do so.]

[2. The provision in the statute that jurors shall be returned, as there shall be occasion for them, from such parts of the district, from time to time, as the court shall direct, so as to be most favorable to an impartial trial, etc., leaves it entirely discretionary with the court to give or not to give any directions as to the place from which the jurors shall be summoned. If defendant desires that such directions should be given, he should apply to the court therefor. In the absence of such application, it is no ground of challenge to the array that the marshal has summoned the jurors according to his own will.]

At the district court of the United States, held before his honor, TALLMADGE, District Judge, which commenced its sessions on the fourth instant, several of those suits which have been instituted to recover penalties under the embargo laws were noticed for trial. Among others the cause of the United States against Edward Price, which was an action of debt to recover against him, as master or person having charge of the schooner Regulator, or as being knowingly concerned in the lading of the said vessel, penalties for loading in the nighttime, without a permit, and without the inspection of the proper revenue officer. A great part of the jury which appeared to serve at this court were from Orange, a county fifty or sixty miles from the city, from whence they had been summoned by the marshal without any official direction of the judge, and were selected by the mere will of the marshal, without any attempt having been made to conform to the mode of forming juries in the courts of this state. By the judiciary act of the United States, passed in 1789 [1 Stat. 73], it is enacted "that jurors in all cases to serve in the courts of the United States shall be designated by lot or otherwise in each state respectively, according to the mode of forming juries therein then practised, so far as the laws of the same should render such designations practicable by the courts of the marshals of the United States; and that the jurors should have the same qualifications as are requisite for jurors by laws of the state of which they are citizens, to serve in the highest courts of law of such state, and should be returned as there should be occasion for them from such parts of the district, from time to time, as the court should direct, so as should be most favorable to an impartial trial, and so as not to incur an unnecessary expense, or unduly to burthen the citizens of any part of the district with such services." This law as to the mode in which jurors were to be designated refers to the time when it was passed, but, alterations having been afterwards made in the mode of selecting jurors in several of the states, and particularly in our state, by an act which provided that jurors in this state should be selected by ballot from a list annually returned to the clerk's office of every county, by certain

persons designated in the law; congress, in May, 1800 [2 Stat. 82]. passed a law, which, so far as relates to the mode of selecting jurors, is nearly in the words of the law of 1789, and declares that jurors to serve in the courts of the United States shall be designated by lot, or otherwise, in each state or district, respectively, according to the mode of forming juries to serve in the highest courts of law therein, then practised, so far as the same shall render such designation practicable by the courts or marshals of the United States. But the United States' law of 1789, so far as it relates to the courts directing from what part of the district the jury shall be taken, remains unaltered.

On Tuesday last, the district attorney moved to bring on the trial of the above-mentioned cause, when Mr. Griffin and Mr. Colden, who were of counsel for the defendant, filed a challenge to the array, alleging that the jurors were not legally returned, because they had been summoned by the marshal of his mere arbitrary will; that they had not been returned from a part of the district directed by the court. To this challenge the attorney of the United States demurred ore tenus; that is to say he made a parol declaration that no legal objections to the jury were shown by the defendant's challenge. The counsel for the defendant insisted that the attorney of the United States ought to be compelled to put his demurrer in writing, but the court determined, that a parol demurrer was sufficient, and the court also decided that the attorneys might immediately proceed to argue on the demurrer whether there was cause of challenge which they accordingly did.

The attorney of the United States contended that it was impracticable to select the jury by ballot, as was practised by the courts in this state, or in anywise to conform to the state laws in this respect; that the part of the United States law which provides for the jurors being returned from such part of the state as should be directed by the judge, was a provision merely intended for the ease and convenience of jurors, and gave the parties no rights; besides, that though the act of congress authorized the court to direct from whence the jury was to come, this authority was only to be exercised on application of the party who desired it to be executed, and the defendant having made no application to the court, he was not to be allowed to make the want of its direction an objection to the jury; and, lastly, the attorney of the United States insisted that the jury had been summoned according to what had been the practice of the court from its institution.

The counsel for the defendant insisted that as the attorney of the United States had demurred to the challenge, and took no exception to its form, he admitted the facts. He had admitted therefore that the jurors had not been elected by ballot according to the state laws as far as was practicable, and that they had not been summoned from a part of the district directed by the court; that therefore the only inquiry was, whether the laws of congress required that these things should be done, and the defendant had nothing to do but appeal to the statute book; that if the attorney relied on the impracticability of conforming to the practice under the state laws, he ought to have pleaded to the challenge, or have moved to quash it; but as the court had decided that it was now proper to discuss the points which the attorney had been permitted to state, the defendant's counsel would, in behalf of the defendant, answer the arguments which had been offered by counsel for the plaintiffs.

The defendant's counsel then proceeded to state that, as to the manner of electing the jury, it was to be observed, that the act of congress did not require a full compliance with the state laws; that the great object was to preserve to suitors in the courts of the United States, as far as was practicable, the invaluable right of having the jurors elected by ballot, and that this was by no means impracticable; that in every clerk's office, in the state, there was a book containing the names of the freeholders in the county qualified to serve on juries; that the judge might have directed from what county the jury should have been summoned, that the marshal might have applied to the clerk of that county for a copy of his list of freeholders; from that list he might have made his ballots, and he might have balloted for the panel in the presence of the judge or the clerk of this court, which would have been a very near approximation to the mode of electing jurors for the state courts; or the marshal, with the assistance of his deputies, might have made a list of freeholders in any part of the district that the court might have designated, and then there would have been no difficulty in making the ballot. But, at any rate, no sufficient reason had been offered for the neglect of part of the act which requires the court to direct from what place the jury should be taken. The terms of the law of congress left no discretion with the court in this respect. The words of the statute are not that the court "may," but that the court "shall," direct from what part of the district the jurors shall be returned. That it was absurd to say, that the defendant in such cause was to apply for the direction of the court, because jurors were summoned to try all the causes which might be brought on at a sitting; and, if such an application was to be attended to from each defendant, there might be as many panels returned as there were causes. That the defendant might not have had an opportunity of making such an application; for that the process to summon the jury might have been issued and executed before he received notice that his cause was to be tried. Besides, that it was a general principle, that the plaintiff

must take care that the jurors that appeared, as well in respect to the manner of their being chosen as to their qualifications, were proper to try his cause, and if they were not, the defendant might take advantage of it, as was every day's practice for defendant to do. As to the former practice of the court, the defendant's counsel observed, that that ought to have no influence on his honour's decision, because it was well known that until very lately the causes which were submitted to a jury in this court were very few, and comparatively of very little consequence, and were seldom of a nature to excite any fears that the jury might have a bias to the one side or the other. That therefore the manner in which jurors had been selected had never excited any attention; but at this time the case was very different, for it was not an exaggeration to say that there were now millions depending on the event of suits which had been instituted for breaches of the embargo laws. That it was well known that libels were now upon the records of the court which proceed upon the ground that the president's proclamation of the 19th April last, opening the intercourse with Great Britain, was an illegal act. That he had no authority to issue it. That therefore it was a mere nullity, and that, of course, the nonintercourse act of the 1st of March, with all its denunciations of penalties and forfeitures, had always been in full force. That if the courts were to be of this opinion, there was hardly a merchant in the United States who was not at the mercy of the executive officers of the government, who might not have their property seized, and who might now be prosecuted in suits of this nature for enormous penalties. It became therefore now of the utmost importance to see that all the cautions which the laws had provided for an impartial selection of jurors should be observed. That the questions between the government and the citizens which were to be decided in this court under the embargo laws it was well known had greatly excited the public mind. It would hardly be denied that many might be found in the district who were so blinded by their political prejudices and by their passions, that they would never acquit a political opponent accused of a breach of the embargo laws, which were so dear to those who favor them; at the same time it was not meant to be denied, but that men might also be found as prejudiced against convicting. If then a marshal might run from one end of his district to the other to select just whom he pleased for trials of this nature, it was in fact putting it in the power of an individual to determine who should be convicted, and who acquitted, in the courts of the United States.

The counsel of the defendant called the attention of the court to the constitution of the United States and its amendments. The first provided that the trial of all crimes shall be by jury. But it being feared that this inestimable right was not sufficiently guarded by this simple provision, the seventh article of the amendment provides, that in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury. The counsel then asked whether it was possible to suppose, that the framers of the constitution or of its amendments could have imagined, that notwithstanding the provisions, a citizen might be subject to trial for his life, even by a jury selected at the mere will of a marshal who might be his prejudiced political opponent or his bitterest enemy. Had a defendant, the counsel asked, any security for an impartial jury in cases like this, where the jurors may be selected at the mere will of an officer holding his commission, at the pleasure of the officer of the government, at whose instigation the suit is instituted, and who has an eventual pecuniary interest in the conviction of the defendant; for if the penalties which are demanded in these cases are to be levied on execution, the marshal's share of them will be no inconsiderable fortune.

The counsel for the defendant both declared, that the attempt they made in this case was merely with a view to secure to suitors in this court the benefits of those provisions of the state laws which were so well calculated to guard against corruption and partiality, and which, perhaps, was a greater improvement in jurisprudence, than the institution of trial by jury itself. That in what they had said respecting the marshal and jurors, they referred entirely to what might be, without intending any insinuation as to what was or had been. That as to the present marshal, they had never heard anything to his prejudice, and they did not know anything of the jurors, from a distant part of the district, who were on the panel.

When the United States attorney had said a few words in reply to the arguments of the defendant's counsel, the judge told him it was unnecessary for him to proceed, as the court was satisfied on the subject.

We shall not attempt to detail the reasons his honour gave for his decision, for fear of mistakes. He, however, exactly agreed with the attorney of the United States in all points. He thought it was wholly impracticable to have any ballot or to conform in any respect to the state laws. That it was discretionary with the court to give or not, at its pleasure, any direction as to the summoning the jury; and that if a defendant was desirous that a direction should be given, it was his business to apply for it, and the judge ordered the clerk to enter on the minutes the demurrer of the attorney of the United States, and that, upon hearing counsel thereupon, the court gave judgment in favor of the United States. So that, according to the decision, the marshal of the United States in all cases, whether civil or criminal, whether the life or property of a defendant is concerned, or

whether the defendant be his friend or enemy, has an uncontrollable power of selecting whom he pleases for jurors.

It would really seem a little difficult to reconcile the entries which appear on the records of the court with the provisions of the constitution and laws of the United States. The laws require that the jurors shall be selected, as far as is practicable, by ballot, and that they shall be taken from a part of the district designated by the court. The defendant alleges by his challenge, that neither of these provisions have been complied with.

The attorney of the United States by his demurrer admits these allegations to be true, and yet the judgment of the court is that the jury have been legally summoned.